NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SOCIEDAD ESPANOLA DE ELECTROMEDICINA Y CALIDAD, S.A.,**
*Plaintiff-Appellant*

**v.**

**BLUE RIDGE X-RAY COMPANY, INC., DRGEM USA, INC., DRGEM CORPORATION,**
*Defendants-Appellees*

---

2015-1102

---

Appeal from the United States District Court for the Western District of North Carolina in No. 1:10-cv-00159-MR, Judge Martin Reidinger.

---

Decided: July 31, 2015

---

BRADLEY F. RADEMAKER, Neal, Gerber & Eisenberg, LLP, Chicago, IL, argued for plaintiff-appellant. Also represented by MICHAEL RYAN TURNER.

BRADY J. FULTON, Northup, McConnell & Sizemore, Asheville, NC, argued for defendants-appellees.

---

Before LOURIE, SCHALL, and LINN, *Circuit Judges.*

LINN, *Circuit Judge.*

Sociedad Espanola de Electromedicina y Calidad, S.A. ("SEDECAL") appeals the district court's construction of certain claim terms of U.S. Patent No. 6,642,829 (the "'829 patent") and its grant of Blue Ridge X-Ray Co., DRGEM USA, Inc. and DRGEM Corp.'s ("Blue Ridge's") motion to amend their invalidity contentions pursuant to which the district court granted summary judgment that the asserted claims of the '829 patent are invalid and not infringed. *See Sociedad Espanola de Electromedicina y Calidad, S.A. v. Blue Ridge X-Ray Co., Inc.*, 47 F. Supp. 3d 381 (W.D.N.C. 2014) ("*Merits Op.*"); 2013 WL 4211846 (W.D.N.C. May 15, 2013) ("*Construction Op.*"). We revise the district court's construction of the challenged claim terms and, accordingly, reverse its grant of summary judgment.

## I. BACKGROUND[1]

### A. The '829 Patent

The '829 patent issued from U.S. Patent Application No. 09/889,534 (the "'534 application"). The patent relates to a high voltage transformer consisting of positive and negative voltage elements arranged into two separate groups that are separated by a single insulating barrier. '829 patent abstract; col.2 ll.18–24. The purpose of the invention is to create a more cost and size-efficient high voltage transformer. *Id.* at col.1 ll.5–7.

Claim 1 is the only independent claim and recites, with emphases added:

---

[1] As we write for the parties, we assume familiarity with the underlying facts.

1. A high voltage transformer having a plurality of elements for voltage transformers, said elements comprising:

. . .

a magnetic core (**7, 7′**),

. . .

wherein each rectifier, filter, resistive divider, high voltage switch, magnetic core, has a first end and a second end,

each first end being connected to zero voltage level;

each second end being opposite to each first end; *said* rectifiers, filters, resistive dividers, high voltage switches, *magnetic cores, are arranged in two differentiated groups*,

a first group comprising positive voltage elements and

a second group comprising negative voltage elements; the positive voltage elements are separated from the negative voltage elements by solid insulating means in *two insulated chambers . . . .*

## B. The Procedural History

The parties disputed the proper construction of the phrase "two insulated chambers." Construction Op. at *7. According to SEDECAL, it meant two "electrically insulated" chambers, whereas according to Blue Ridge it meant two "chambers [that are] enclosed and isolated from each other, that is, physically separated." Id. at *7–8. The district court ultimately construed "two insulated chambers" as "two different chambers that are insulated from each other." Id. at *10.

The district court ultimately granted summary judgment that the asserted claims are inoperative and therefore invalid under §§ 101 and 112. *Merits Op.*, 47 F. Supp. 3d at 384–87. According to the district court, the phrase "said . . . magnetic cores, are arranged in two differentiated groups," indicates that the transformer contains two separate and unconnected cores. *Id.* at 385. "Based on that construction," the district court concluded, "it is undisputed that the '829 Patent claims describe a device that does not function." *Id.* at 386.

The district court further found that Blue Ridge's products did not meet the "two insulated chambers" limitation because Blue Ridge's transformers had two chambers that "open[ed] directly into one another," "lack[ed] any physical barrier between portions of the two regions," and because "oil is able to flow freely throughout the entire housing." *See id.* at 387. It also found that Blue Ridge's transformers did not meet the "magnetic cores" limitation, because they contained only a single core ring. *See id.* at 387–88.

SEDECAL appeals. This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

### A. Standards of Review

The "ultimate interpretation" of a claim term, as well as interpretations of "evidence intrinsic to the patent (the patent claims and specifications, along with the patent's prosecution history)," are legal conclusions, which this court reviews *de novo*. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). However, where a district court "make[s] subsidiary factual findings about . . . extrinsic evidence[,] th[e] subsidiary factfinding must be reviewed for clear error on appeal." *Id.* Where "there is no indication that the district court made any factual findings that underlie its [claim] constructions," we re-

view the district court's constructions entirely *de novo*. *Shire Dev., LLC v. Watson Pharm., Inc.*, 787 F.3d 1359, 1368 (Fed. Cir. 2015).

"This court reviews the district court's grant or denial of summary judgment under the law of the regional circuit," *Lexion Med., LLC v. Northgate Techs., Inc.,* 641 F.3d 1352, 1358 (Fed. Cir. 2011), here the Fourth Circuit. The Fourth Circuit "review[s] a district court's decision to grant summary judgment de novo, applying the same legal standards as the district court, and viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Harris v. Norfolk S. Ry. Co.*, 784 F.3d 954, 962 (4th Cir. 2015) (citations omitted).

## B. Claim Construction

Claim terms are generally given "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citations omitted). "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313.

The parties dispute the proper construction of two claim terms: "two insulated chambers" and "magnetic core." Because the district court relied only on intrinsic evidence in its claim construction, we review its claim construction entirely *de novo*.

### 1. "Two insulated chambers"

In its original claim construction order, the district court construed "two insulated chambers" as "two different chambers that are insulated from each other." *Construction Op.* at *10. The district court elaborated on this construction in its summary judgment order, explaining

that this meant the two chambers could not "open directly into one another," could not have "oil [that] is able to flow freely throughout the entire housing," and required a "physical barrier between portions of the two regions." *Merits Op.*, 47 F. Supp. 3d at 387.

SEDECAL argues that that the district court erred in construing the claims to require more than electrical insulation. According to SEDECAL, both intrinsic and extrinsic evidence shows that the word "insulated" means electrically insulated. Blue Ridge, for its part, argues that both the word "insulated" and the word "chambers" imply physical isolation. According to Blue Ridge, this construction is supported by the specification and the prosecution history.

The claims of the '829 patent are no model of clarity. The very fact that both parties suggest defining the term "two insulated chambers" by adding words—SEDECAL suggesting that it should be construed to be "two *electrically* insulated chambers" and Blue Ridge suggesting "two *isolated and* insulated chambers"—reflects the fact that clearer drafting would have been helpful. *Construction Op.* at *7. As a result, the district court struggled with how to properly construe the claims. While we do not fault the district court's efforts to make sense of the patent language, we conclude on the basis of all the evidence that the district court erred in its constructions.

On the record before us, the claim term "two insulated chambers" simply refers to electrically insulated chambers. The Background of the Invention explains that the difficulty with prior art transformers was in "achieving the electrical insulation between the various elements." '829 patent col.1 ll.16–17; *see id.* at col.1 ll.29–42. The Description of the Invention explains that one benefit of the invention is reducing "the number of . . . electrical insulation parts." *Id.* at col.3 l.14–16. The patent's focus on *electrical* insulation reflects the fact that the invention

involves placing elements of similar electrical voltage in close proximity to reduce "the insulator filling." *Id.* at col.4 ll.47–49. This plain and ordinary meaning of "insulated" is confirmed by the dictionary of the Institute of Electrical and Electronics Engineers ("IEEE"), which defines "insulated" as ". . . offering a high resistance to the passage of current . . . ." *IEEE 100: The Authoritative Dictionary of IEEE Standard Terms* 564 (7th ed. 2000).

The district court recognized that construing "insulated chambers" as electrically insulated "has a common sense appeal." *Construction Op.* at *7. Nevertheless, it concluded that the patentees disavowed this definition during prosecution. *Id.* at *8–10. The district court placed great weight on the patentees' statement during prosecution describing their invention as requiring "**different** and **isolated** chambers," quoting this language three different times. *Id.* at *9, *10 (quoting '534 application at applicants remarks (May 27, 2003) (emphases in original)). The district court's quote of the prosecution history was inaccurate. The prosecution history refers to the chambers as being "**different** and **insulated**," but never refers to them as being isolated. What was referred to as being "isolated" were the "**different** and **isolated** columns." '534 application, applicants remarks (May 27, 2003). The prosecution history thus fails to support the district court's characterization of the two chambers as being so isolated that nothing can pass from one to the other. The prosecution history certainly does not rise to the level of a clear and unmistakable disavowal.

Blue Ridge argues that the plain and ordinary meaning of "chambers" requires some sort of an enclosure. True enough. But Blue Ridge has failed to show that such an enclosure must be so closed or isolated as to prevent oil or other elements from passing from one enclosure to another.

Blue Ridge also argues that because the two chambers themselves have no electrical charge, the adjective "insulated" cannot refer to electrical insulation. Blue Ridge ignores the fact that the claim recites "positive voltage elements [that] are separated from the negative voltage elements by solid insulating means in two insulated chambers." The purpose of the insulation is to *electrically* insulate the charged voltage elements found in the two chambers from one another, not just the chambers themselves.

Finally, Blue Ridge argues that Figure 3 shows two chambers that are "enclosed or physically separate chambers." Appellee's Br. at 55. At best that suggests that two isolated chambers are within the scope of the claim. It does not suggest that the claim is so limited. *See GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("while the specifications only disclose a single embodiment of an IDC connector in Figure 6, they do not disavow or disclaim the plain meaning of IDC connector or otherwise limit it to that embodiment").

Thus, the proper construction of "two insulated chambers" is "two electrically insulated chambers."

### 2. "Magnetic cores"

At the district court, SEDECAL argued that "magnetic cores" refers to two core legs, which are connected by yokes. *Merits Op.*, 47 F. Supp. 3d at 385. The district court rejected this argument based on its construction of "two insulated chambers" and because nothing in the '829 patent suggested that the "claimed device [had] core 'legs' or 'yokes' or indicates that the device contains anything less than two magnetic cores." *Id.* The district court noted that it is undisputed that a transformer with two separate magnetic cores that are isolated and sealed off from each other would be inoperable. *See id.* at 386–87.

SEDECAL continues to argue that the "magnetic cores" refers to core legs. It contends that the phrase "magnetic cores" is a synecdoche: it sometimes means a full core ring but, in other contexts, it means just the legs of a full core ring. The second meaning should be applied here, SEDECAL believes, because it is the only interpretation that makes the claims operable. Blue Ridge, on the other hand, argues that the plain and ordinary meaning of "magnetic cores" only refers to full core rings and not to core legs.

Both parties argue that the figures of the '829 patent support their positions. Figure 1 of the '829 patent shows a yoke connecting the 7 and 7' core legs that are found in the two chambers, while Figure 3 shows no connection between the two chambers. SEDECAL argues that there is more to the transformer in Figure 3 than meets the eye and it actually allows for a yoke between the two legs. That yoke was omitted because it was "not relevant to what is being shown." Appellant's Br. at 34. Blue Ridge claims that "there is a contradiction between" Figures 1 and 3. Appellee's Br. at 38.

In this context, the term "magnetic cores" refers to the legs of a full core ring. The district court's construction to the contrary was error. First, Figure 1 of the '829 patent shows a yoke connecting the 7 and 7' core legs. While that yoke is absent in Figure 3, it is more reasonable to conclude that Figure 3 omitted certain elements of the transformer for the sake of brevity than to find Figures 1 and 3 contradictory, as Blue Ridge claims.

Second, the plain and ordinary meaning of the phrase "magnetic core" can refer to core legs. For example, Blue Ridge concedes that in U.S. Patent No. 6,278,355 (the "'355 patent"), the patentees—including Philip J. Hopkinson, Blue Ridge's expert in this case—"clearly and expressly equated the terms 'leg,' 'core,' 'magnetic core,' and 'transformer core,' and consistently used those terms to

mean the same thing." Appellee's Br. at 36; *see id.* (the patent "repeatedly us[ed] these different terms interchangeably to refer to the same item"). While it is true that the '829 patent actually uses the phrase "core leg[s]" to describe the prior art, *see* '829 patent col.2 ll.8–14, that is not persuasive evidence that the term "magnetic core" does not mean "core legs." "[T]he general assumption . . . that different terms have different meanings" applies to "terms in the body of a claim," but not necessarily elsewhere in the specification where the context indicates otherwise. *Symantec Corp. v. Computer Assocs., Int'l, Inc.*, 522 F.3d 1279, 1289 (Fed. Cir. 2008).

Blue Ridge argues that a synecdoche is inherently ambiguous and should, therefore, be construed against SEDECAL. That is not the law. Where a claim term "ha[s] more than one plain and ordinary meaning," we look to the specification to ascertain which definition is intended. *See Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, --- F.3d ----, 2015 WL 3613644, at *4 (Fed. Cir. June 10, 2015).

From the foregoing, we conclude that the phrase "magnetic core" as used in the specification of the '829 patent refers to core legs connected by yokes. The district court's contrary conclusion is unsupported by the specification and is erroneous.

## C. Invalidity and Infringement

The district court's summary judgments of invalidity and non-infringement were premised on its erroneous claim constructions. Those decisions are therefore vacated and remanded.

## D. Motion to Amend Invalidity Contentions

SEDECAL argues that the district court abused its discretion by allowing Blue Ridge to amend their invalidity contentions to raise an inoperability defense. Because

the claims, as properly construed, are not inoperable, this argument is now moot.

### III. CONCLUSION

For the forgoing reasons, the district court's claim constructions are revised as stated herein and its grant of summary judgment of invalidity and non-infringement is reversed. The case is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**