NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ZHEJIANG MEDICINE CO., LTD., ZMC-USA L.L.C.,**
*Plaintiffs-Appellees*

**v.**

**KANEKA CORPORATION,**
*Defendant-Appellant*

---

2016-1390

---

Appeal from the United States District Court for the Southern District of Texas in No. 4:11-cv-01052, Magistrate Judge Mary Milloy.

---

Decided:  January 23, 2017

---

BRIAN ROSENTHAL, Mayer Brown LLP, Washington, DC, argued for plaintiffs-appellees. Also represented by PAUL WHITFIELD HUGHES, GARY HNATH; CHARLES STEPHEN KELLEY, TRENTON MENNING, Houston, TX.

KEITH D. NOWAK, Carter Ledyard & Milburn LLP, New York, NY, argued for defendant-appellant. Also represented by WILLIAM F. SONDERICKER; ROBERT MCGEE BOWICK, JR., Raley & Bowick, LLP, Houston, TX.

---

Before LOURIE, MOORE, and O'MALLEY, *Circuit Judges.*

MOORE, *Circuit Judge.*

Kaneka Corporation ("Kaneka") appeals from the Southern District of Texas' summary judgment of noninfringement of all asserted claims of U.S. Patent No. 7,910,340 ("the '340 patent"). For the reasons discussed below, we *vacate* and *remand*.

BACKGROUND

The '340 patent is directed to an industrial process for producing oxidized coenzyme $Q_{10}$ ("$CoQ_{10}$"), an antioxidant used in health supplements. Kaneka brought suit against Zhejiang Medicine Co., Ltd. and ZMC-USA LLC (collectively, "ZMC"), asserting their manufacturing processes infringe one or more claims of the '340 patent. The dispute centers on the claims' requirement of "oxidizing" reduced $CoQ_{10}$, as recited in the two independent claims at issue, 22 and 33.[1] The district court originally construed the term "oxidizing" to have its ordinary and customary meaning, rejecting Kaneka's argument that the "oxidizing" term requires "increasing the rate" of oxidizing reduced $CoQ_{10}$. Both parties submitted expert reports opining on whether ZMC's processes satisfy the "oxidizing" limitation under the district court's construction.

Meanwhile, in a separate appeal concerning the same patent, a panel of this court construed the term "oxidizing" to mean "some action resulting in oxidation." *Kaneka*

---

[1] Claim 22 requires "oxidizing thus-obtained reduced coenzyme $Q_{10}$ to oxidized coenzyme $Q_{10}$" and claim 33 requires "oxidizing the extracted reduced coenzyme $Q_{10}$ to oxidized coenzyme $Q_{10}$."

*Corp. v. Xiamen Kingdomway Grp. Co.*, 790 F.3d 1298, 1307 (Fed. Cir. 2015). Approximately two weeks after *Kingdomway* issued, the district court held a status conference to address the impact of the *Kingdomway* construction on the proceedings. At the conference, Kaneka stated that its expert, Dr. Sherman, "looked at the Federal Circuit decision in detail and [ ] has no need to file a revised report." J.A. 14895:7–9. ZMC responded that their expert would like to supplement his report, to which Kaneka objected, arguing both its and ZMC's expert reports addressed the issue of active oxidation, as required by *Kingdomway*. The district court determined that ZMC could file a supplemental expert report by July 16 and that Kaneka could respond to or depose ZMC's expert by August 1.

July passed and ZMC did not submit a supplemental expert report, and thus Kaneka did not respond to or depose ZMC's expert. Instead, on August 13, ZMC moved for summary judgment of noninfringement based on the "oxidizing" limitation. In its motion, ZMC argued that Kaneka failed to show "what oxidation, if any, of coenzyme $Q_{10}$ during ZMC's process is attributable to *active oxidation above the level of passive oxidation* that naturally occurs throughout ZMC's process." J.A. 14821. ZMC also argued that Dr. Sherman's expert opinion of infringement, based on the district court's pre-*Kingdomway* claim construction of "oxidizing," was now irrelevant and could not be relied on by the court.

The district court agreed with ZMC's interpretation of the *Kingdomway* construction, determining that "oxidizing" required "some amount of oxidation, in excess of that which occurs naturally from exposure to ambient air." J.A. 48. It interpreted ZMC's criticism of Dr. Sherman's report on the "oxidizing" limitation as a motion to exclude and granted it, agreeing his opinion was "irrelevant" based on a "now incorrect" construction. J.A. 46–51. It denied Kaneka's alternative request to supplement

Dr. Sherman's report. The district court held that, based on the record before it, Kaneka failed to provide evidence that the oxidation in ZMC's manufacturing process was the result of ZMC's active processes to oxidize $CoQ_{10}$, as compared to passive oxidation, and granted summary judgment of noninfringement. Kaneka timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

DISCUSSION

For issues not unique to patent law, we apply the law of the regional circuit where this appeal would otherwise lie, which in this case is the Fifth Circuit. *LaserDynamics, Inc. v. Quana Comput., Inc.*, 694 F.3d 51, 66 (Fed. Cir. 2012). We review evidentiary rulings for an abuse of discretion. *Id.* We review decisions on motions for summary judgment de novo. *Id.* Summary judgment is appropriate when, drawing all justifiable inferences in the nonmovant's favor, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A. Claim Construction of "Oxidizing"

At the outset, Kaneka argues the district court "improperly changed" our construction of "oxidizing" in *Kingdomway* from "some action resulting in oxidation" to an action that increases the amount of oxidation above a baseline of passive oxidation. It argues the district court's changed construction led it to erroneously exclude Dr. Sherman's expert report and grant summary judgment of noninfringement. We agree in part.

In *Kingdomway*, we held "oxidation requires an active step." 790 F.3d at 1305. We explained that "because the claims affirmatively recite the step of 'oxidizing,' 'oxidizing' cannot be interpreted as doing nothing, or to simply allow oxidation to occur on its own." *Id.* This construc-

tion "requir[es] active oxidation during the oxidation step . . . but does not exclude passive oxidation during other steps." *Id.* at 1306.[2]

The district court interpreted our construction to mean "some amount of oxidation, *in excess of that which occurs naturally from exposure to ambient air*, must be caused by an 'active step' in the coenzyme $Q_{10}$ manufacturing process." J.A. 48 (emphasis added). This is not precise. The only bounds provided by *Kingdomway* on what constitutes an "active step" or "active oxidation" is that it does not require use of an oxidizing agent. 790 F.3d at 1306. The opinion emphasizes that there must be "*some* action resulting in oxidation"; the oxidizing step "cannot be interpreted as doing nothing, or to simply allow oxidation to occur on its own." *Id.* at 1305–06 (emphasis added). But the opinion does not state that to be an active step, the oxidation rate must be greater than that of passive oxidation. And it is silent as to any degree of oxidation that would be necessary to qualify as active oxidation. The opinion simply requires that there be some action that results in oxidation. *Id.* at 1307.

A review of the district court's construction of "oxidizing" on appeal in *Kingdomway* frames the *Kingdomway* construction. There, the district court held that "oxidizing" required, *inter alia*, "active conversion of the reduced $CoQ_{10}$ into oxidized $CoQ_{10}$," which was supported by the specification's examples using an oxidizing agent in the oxidizing step. *Kaneka Corp. v. Kingdomway Grp. Co.*, No. 2:11-cv-02389, 2013 WL 4647299, at *8 (C.D. Cal. July 24, 2013), *aff'd in part, vacated in part*, 790 F.3d

---

[2] The question whether the term "oxidizing" requires an oxidizing agent was before the prior panel of this court, and we are bound by their decision that it does not. *See id.* Thus, it is not a decision that we can review.

1298. In adopting its "active conversion" construction, the district court rejected an alternative proposed construction that "oxidizing" means "'increasing the rate' of conversion to oxidized $CoQ_{10}$." *Id.* at *7–8. The district court reasoned that "[w]ithout a baseline reference for comparison, a person of skill in the art cannot know whether a rate of conversion is increased," making such a construction "too vague to adopt." *Id.* at *8.

On appeal, we "agree[d] that oxidation requires an active step," but held "it does not require the use of an oxidizing agent." *Kingdomway*, 790 F.3d at 1305–06. The opinion does not place additional qualifications on what must occur to be an "active step." And although discussed in briefing to this court, s*ee* Appellees' Br. 46–47, *Kingdomway*, No. 14-1373 (Fed. Cir. Aug. 6, 2014), the *Kingdomway* court did not require "increased oxidation" "in excess of that which occurs naturally from exposure to ambient air." *See* J.A. 48.

Against this backdrop, we consider Kaneka's arguments that the district court (1) abused its discretion in excluding Mr. Sherman's expert report and (2) erred in granting ZMC's motion for summary judgment of noninfringement. We affirm the district court's exclusion of portions of Mr. Sherman's expert report and vacate the district court's grant of summary judgment of noninfringement.

## B.  Exclusion of Dr. Sherman's Expert Report on Infringement

Kaneka argues the district court abused its discretion in excluding the portions of Dr. Sherman's expert report regarding the "oxidizing" limitation and denying its

alternative request to supplement its expert report.[3]  It argues Dr. Sherman's report sufficiently embraces the *Kingdomway* construction of "oxidizing" and "plainly identifies and describes the action taken by ZMC during its manufacturing process that results in oxidation." Appellant's Br. 31.

As discussed *supra*, we agree with Kaneka that the district court misinterpreted the *Kingdomway* construction.  The district court required Dr. Sherman's report to address more than was necessary under *Kingdomway*. *See* J.A. 50 (criticizing Dr. Sherman's report for not addressing whether ZMC's processes "actually do cause any amount of oxidation, *beyond that which occurs naturally*, as a result of the microbial cells' exposure to ambient air") (emphasis added).  We, thus, need not decide whether it would have been an abuse of discretion to exclude Dr. Sherman's opinions regarding the "oxidizing" limitation under the district court's initial interpretation of *Kingdomway*.

We also decline to assess Dr. Sherman's report in the first instance to determine the relevance of his opinions in light of our claim construction conclusions.  We leave that question, as well as the question of whether to allow one or both parties' experts an opportunity to supplement their reports in response to our opinion.

---

[3]     Kaneka also appeals several of the district court's evidentiary rulings unrelated to the court's grant of summary judgment.  Kaneka argues the district court erred in (1) denying its motion to compel test results relating to a different limitation; (2) excluding testimony regarding that limitation; and (3) excluding testimony of its damages expert.  Because these issues do not affect the summary judgment entered by the district court, we decline to review them.

C.   Grant of Summary Judgment of Noninfringement

Even without Dr. Sherman's report, Kaneka argues that ample evidence precluded the district court's grant of summary judgment of noninfringement.  We agree.

The district court determined, viewing the evidence in the light most favorable to Kaneka, that "no reasonable fact finder could conclude that the oxidation step in ZMC's process results from an 'active step,'" as required by *Kingdomway*.  J.A. 53.  It explained, "Kaneka has not produced any evidence to show that the oxidation levels would have been different, if . . . ZMC had taken no action at all."  J.A. 54.  Here, the district court's misinterpretation of the *Kingdomway* construction marred its analysis.  To meet the "oxidizing" limitation, ZMC's processes need not produce a "different" rate of oxidation.  There simply must be "some action resulting in oxidation."  *Kingdomway*, 790 F.3d at 1307.  The *Kingdomway* court simply required that the oxidation occurred via an "active step."

Evidence showing that the oxidation achieved from ZMC's active steps is greater than passive oxidation is one way in which Kaneka could support its infringement theory—and possibly the most persuasive way—but this level of evidence is not necessary to show infringement.  Particularly at the summary judgment stage, the court must focus its inquiry on what a reasonable jury could find, not what evidence may be the most compelling.  Portions of the district court's analysis appear to heighten Kaneka's burden to defend ZMC's motion for summary judgment.  *See, e.g.*, J.A. 53 (criticizing Kaneka's evidence because "it does not show that that oxidation is, *in fact*, a result of actions by ZMC") (emphasis added).  The district court's own concessions that the evidence "might suggest that oxidation occurs" and "shows that oxidation *could* result from ZMC's actions" indicate that an issue of material fact exists.  *See id.*  Our review of the evidence confirms our understanding.

Evidence in the record details ZMC's manufacturing process for making oxidized $CoQ_{10}$, which relevantly involves washing steps, drying the wet mass with compressed and pneumatic air, extracting the mass, and post-extraction washing. Two studies conducted by ZMC show that after the first washing step, the ratio of reduced $CoQ_{10}$ to oxidized $CoQ_{10}$ went from 81.1% to 26.9% (first study) and 88.5% to 55.6% (second study). After the drying step, the same data shows the ratio of reduced $CoQ_{10}$ to oxidized $CoQ_{10}$ went from 26.9% to 21.3% (first study) and 55.6% to 18.2% (second study). Both of these steps are active process steps. A ZMC witness testified that the pneumatic drying step occurs in an enclosed container. This evidence collectively raises an issue of material fact concerning whether ZMC's washing and drying steps, during which 59.8–70.3% of the reduced $CoQ_{10}$ became oxidized, constitute "some action resulting in oxidation" as required by claim 22. *Kingdomway*, 790 F.3d at 1307. The question is not whether these steps would have caused more or less oxidation than passive oxidation. The question is whether these are active steps resulting in oxidation.

Claim 33 requires the "oxidizing" step be performed on extracted reduced $CoQ_{10}$. The same ZMC data shows that after the final post-extraction washing step, the ratio of reduced $CoQ_{10}$ to oxidized $CoQ_{10}$ went from 16.7% (first study) and 17.5% (second study) to 0%, meaning the $CoQ_{10}$ became fully oxidized. ZMC's expert, in discussing a separate limitation not at issue here requiring an oxidizing agent, conceded that a "source of oxidation" that occurs in ZMC's steps is oxygen, including from "ambient air dissolved in solutions." J.A. 4539 ¶ 157. Evidence that (1) ZMC washes extracted reduced $CoQ_{10}$, (2) oxygen dissolved in solutions used by ZMC is a "source of oxidation," and (3) ZMC's $CoQ_{10}$ is fully oxidized after this step is complete, raises an issue of material fact of infringement.

Under the proper construction, even without consideration of Dr. Sherman's opinions, we conclude there is a dispute of material fact regarding whether ZMC's processes meet the "oxidizing" limitation in claims 22 and 33. The district court erred in granting ZMC's motion for summary judgment of noninfringement.

## CONCLUSION

For the foregoing reasons, we *vacate* the district court's grant of summary judgment of noninfringement and *remand* for further proceedings.

## VACATED AND REMANDED

### COSTS

Costs to Kaneka.